Gregg Roberts
43430 E Florida Ave Ste #F-293
Hemet CA 92544
951-330-4450
Assignee of Record and Judgment Creditor, Pro Se

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

|  |  |
|---|---|
| In re Krista Huezo,<br><br>Debtor | Case No.: 2:23-bk-13644-BB<br>Chapter 7 Proceeding<br><br>**MOTION FOR DETERMINATION OF CLAIM OF EXEMPTION**<br><br>Date/Time: October 4, 2023 at 10:00 AM<br>Courtroom: 1539<br>Judge: Hon. Sheri Bluebond<br>255 E. Temple, Los Angeles CA 90012<br><br>Filed with Declaration of Gregg Roberts |

TO: Krista Ann Huezo, her counsel, and this Honorable Court:

PLEASE TAKE NOTICE that on Wednesday, October 4, 2023 at 10:00 AM or as soon

thereafter as the matter may be heard in the Courtroom of the Honorable Sheri Bluebond, 255 E.

Temple Street, Courtroom 1539, Los Angeles, California 90012, Assignee of Record/Judgment

Creditor Gregg Roberts ("Roberts") will and hereby does move this Court to (1) make a

determination as to the validity and amount of the homestead exemption claimed by debtor

Krista Ann Huezo in the above-entitled case, and (2) for up to 14 more days to obtain certified transcripts.

This Motion is based upon the accompanying Summary, Memorandum of Points and Authorities with all exhibits, the Declaration of Gregg Roberts, documentation contained in the record, and such further oral and documentary evidence as may be presented to the Court at or prior to the hearing on this Motion.

This Motion is being made pursuant to Federal Rules of Bankruptcy Procedure (FRBP) 4003, 9013, and 9014; Local Bankruptcy Rule (LBR) 9013, California Code of Civil Procedure (CCP) § 703.580(b), California Family Code 760, and additional codes and caselaw listed in the table of authorities. If the responsive party desires to respond to the motion, a written opposition must be filed with the Court and served upon the Movant whose name and address appear in the upper-left corner of this Motion no later than 14 days prior to the date set for hearing on this Motion pursuant to LBR 9013-1(f). Failure to timely oppose this Motion may be deemed consent to the granting or denial of the motion. LBR 9013-1(h).

DATED: September 13, 2023.

Respectfully submitted,

Gregg Roberts, Assignee of Record / Judgment Creditor

## Table of Contents

A. INTRODUCTION ....................................................................................5

B. POINTS AND AUTHORITIES............................................................6

   1. California state exemption law outweighs FRBP 4003(c) as to the burden of proof on a claim of exemption; the burden starts out on the claimant, not he who opposes it. .........6

   2. A Debtor can have no valid claim of exemption on an asset that was acquired by her spouse before they got married and where she has never been on title. In fact, it appears that Debtor Krista Ann Huezo AKA Krista Ann Godbold never even married Victor Huezo.7

   3. Debtor has made numerous false statements evidencing a lack of credibility in her previous filings/recordings in this Court, in this District, and Los Angeles County real property records....................................................................................................12

   4. The amount of the equity in the property held by the Debtor's spouse that is protected by the homestead exemption must be reduced by the amount of ill-gotten gains "used to acquire" or "funneled into" the homestead property. ....................................................15

C. CONCLUSION ...................................................................................23

### Table of Authorities

**Cases**

*Duhart v. O'Rourke*, 99 Cal.App.2d 277 [221 P.2d 767] .........................................15

*In re Carrera*, Not Reported in B.R. Rptr. (2016), 2016 WL 4400652, BAP No. NC-15-1383-KiTaJu ............................................................................................................................12

*In re Gilman*, 544 B.R. 184 (2016), Bankruptcy Court, C.D. California.......................7

*In re Nakhuda*, 544 B.R. 886 (2016)...........................................................................12

*In re Tallerico*, 532 B.R. 774 (Bankr.E.D.Cal. 2015)..................................................6

*Kemp v. Enemark*, 194 Cal. 748 [230 P. 441] ............................................................15

*Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) ................6

*Schoenfeld v. Norberg* (1968), 267 Cal. App. 2d 496 ...................................................16

*Shinn v. MacPherson*, 58 Cal. 596 ........................................................................15

*Yolanda's, Inc. v. Kahl & Goveia Commercial Real Estate*, 11 Cal.App.5th 509, 516 (2017) ....23

**Statutes**

11 U.S.C. § 522 ..........................................................................................7

28 U.S.C. § 2075 ........................................................................................6

California Evidence Code § 662 ...........................................................................9

California Family Code § 760 .......................................................................7, 10, 12

CCP § 703.580 .......................................................................................2, 6

**Rules**

FRBP 4003 ...........................................................................................2, 6

FRBP 9011 ............................................................................................12

FRBP 9013 .............................................................................................2

FRBP 9014 .............................................................................................2

LBR 9013 ..............................................................................................2

LBR 9013-1 ............................................................................................2

POINTS AND AUTHORITIES

## A.  INTRODUCTION

The debtor Krista Ann Huezo is the spouse of the Judgment Debtor Victor Huezo in nondischargeability adversary proceeding Case #2:11-ap-02825-RK arising out of BK main case #2:11-BK-35922-RK. After about 10 years of expensive litigation involving two appeals, on November 5, 2021 a final amended nondischargeable judgment (Ex. 1) was entered against Victor Huezo for fraud in the amount of $841,043.89 in favor of Joey Ball. Ball assigned his judgment to Roberts and the assignment was entered into the records of the adversary proceeding on February 3, 2023 (Ex. 2). On June 6, 2023 Roberts was granted an earnings withholding order against Krista Ann Huezo in her husband's adversary proceeding (DE #362, Ex. 3), and Krista Huezo filed her original petition in this case six days later, on June 12.

***Justice delayed is justice denied.*** Assignee and Judgment Creditor Gregg Roberts ("Roberts") brings this motion in the interests of justice. Particularly in cases of intentional torts (fraud) such as this, public policy supports the enforcement of judgments. Krista Huezo has benefited over many years from her husband's fraud; now she tries to protect their ill-gotten gains and defeat Roberts' enforcement efforts through her groundless claim of exemption. Allowing Mrs. Huezo to protect her *alleged* husband's homestead through the baseless assertion of a claim of exemption on a property acquired by Victor Huezo *before she married him*, a property of which *she has never been on title*, and to protect the full amount of the exemption that was *purchased in part with ill-gotten gains* – would be yet another miscarriage of justice in this long-running case.

## B.  POINTS AND AUTHORITIES

*1.  California state exemption law outweighs FRBP 4003(c) as to the burden of proof on a claim of exemption; the burden starts out on the claimant, not he who opposes it.*

703.580. (a) The claim of exemption and notice of opposition to the claim of exemption constitute the pleadings, subject to the power of the court to permit amendments in the interest of justice.

(b) At a hearing under this section, the exemption claimant has the burden of proof.

California Code of Civil Procedure (CCP) § 703.580.

Similarly, in *Tallerico*, [*In re Tallerico*, 532 B.R. 774 (Bankr.E.D.Cal. 2015)] the debtor claimed exemptions under several California exemption statutes. At a preliminary hearing, the court agreed with an objecting creditor and ruled that at trial the debtor would have the burden of proof based on CCP § 703.580(b) "because this state statute trumps the contrary provision in  4003(c)." 532 B.R. at 777.

In reliance on *Raleigh* [*Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000)], *Tallerico* noted that:

> The linchpin in this case is the question whether the burden of proof in Rule 4003(c) preempts the opposite burden of proof in California Code of Civil Procedure § 703.580(b).

> After the Supreme Court determined in *Raleigh* ] that burden of proof is substantive, not procedural, the answer must be in the negative because the Bankruptcy Rules Enabling Act requires that rules "not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075. *Id.*, at 787.

In further support of its holding, the *Tallerico* court explained:

> That Congress was not intending to alter substantive nonbankruptcy law is apparent from the accommodations that Congress extended to state law in § 522(b). Not only did it permit state-law exemptions always to be available in lieu of the new federal § 522(d) exemptions, it took the extraordinary step of authorizing states to forbid use of the federal

exemptions. 11 U.S.C. § 522(b)(2). Such solicitude to state exemption law makes it implausible that Congress simultaneously secretly intended to preempt the state's burden of proof. *Id.*, at 788.

The above excerpts were copied from the trial court ruling in *In re Gilman*, 544 B.R. 184 (2016), Bankruptcy Court, C.D. California, San Fernando Valley Division, Case No.: 1:11-bk-11603-VK, pp. 8-9. Roberts acknowledges that *Gilman* itself has persuasive value only, and that the Ninth Circuit has never actually ruled in favor of the proposition that Roberts here urges upon this Court.

Nonetheless, the cited language seems highly persuasive. If this Court does not agree, the rest of this Motion surely succeeds in *shifting* the burden of proof to the claimant. That, after all, is a key reason that the Ninth Circuit has never ruled on the proposition: because in most or all the cases that came before it that touched on the question, the parties objecting to the claim of exemption successfully carried their burden, regardless of who *first bore* the burden.

   *2.   A Debtor can have no valid claim of exemption on an asset that was acquired by her spouse before they got married and where she has never been on title. In fact, it appears that Debtor Krista Ann Huezo AKA Krista Ann Godbold never even married Victor Huezo.*

Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person *during the marriage [emphasis added]* while domiciled in this state is community property.

California Family Code § 760.

Debtor admits that she is not currently on title or the mortgage to the 9401 Wayside property, on which she has claimed the homestead exemption. Original Petition ("*OP*"), DE #1, pp. 18 (item 2), 21 (item 2.1), and 23 (item 2.4). At the first Meeting of Creditors she admitted that she has *never* been on title to the property, and that Victor Huezo purchased the property *before they were married* (see details and cite below).

Real property records of Los Angeles County going back as far as available through the reseller NETROnline are consistent with the Debtor's testimony described above. In fact, at Recording #20081472478 (Ex. 4), Mrs. Huezo explicitly transferred her (nonexistent) legal interest to Victor Huezo "as his sole and seaprate proeprty" [*sic*].

According to the Original Petition, Victor Huezo "purchased" the 9401 Wayside property in 2004. *OP*, DE #1, pp. 18 (item 2), 21 (item 2.1), and 23 (item 2.4). However, according to her sworn testimony at the first meeting of creditors, Debtor did not marry Victor Huezo until the following year:

> MS. KURTZ:  Okay.  And are you legally married?
> MS. HUEZO:  Yes.
> MS. KURTZ:  And what was the date of your marriage?
> MS. HUEZO:  June 18th, 2005.

*TR., First Meeting of Creditors*, July 17, 2023, 5:4-7.

Appearing to pick up on this critical issue, Trustee Heide Kurtz read from a property report indicating that the property was actually purchased by Victor Huezo in 2002:

MS. KURTZ: On the bankruptcy, on Schedule A, which is where debtors list their real property, it specifically says that for your residence, both the loan and the title are only in your spouse's name.  I just want to verify that.

MS. HUEZO:  Yeah, that is correct.

MS. KURTZ:  And it looks like, if it says here it was purchased in 2004, so that would be prior to your marriage, if your marriage -- yeah, actually, it looks like it was purchased before 2004, maybe -- let's see.  My report, looks like from this property report, it was purchased more in October 2002.  Does that seem correct?

MS. HUEZO:  Yeah, **my husband purchased it before we were married.**

*Id.,* 5:10-22, **emphasis added**.

Mrs. Huezo answered one more question from the Trustee:

MS. KURTZ:  Okay.  And has your name ever been on title?
MS. HUEZO:  No.

*Id.,* 5:23-25.

California Evidence Code § 662 provides: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof."

At the Second Meeting of Creditors on August 14, 11 AM the following exchange took place:

MR. ROBERTS:  Moving on, will you state all facts and legal arguments that you believe support your claim of any legal or beneficial interest in the real property at 9401 Wayside? Sorry.  Did you hear the question?

MR. STONG:  Hello, Mr. Roberts.  I'm telling Ms. Huezo not to answer the question because she cannot give you a legal opinion as to why she feels she has a beneficial interest. [1]  She lives in a community property.  She stated she's married to Huezo.[2]

So if you have another question regarding her assets that have not been listed in the bankruptcy, please let us know what those assets might be.

MR. ROBERTS:  So we covered some of the questions last time about whether she'd ever been on title or ever been on the deed of trust.  I don't see why people would put anything about their marital relationship on deed records if they're married when it doesn't have any -- according to what you just suggested, if it has no legal significance.  There has to be a way for creditors to read public records and understand whether there's a community interest there or not.

And so I'm asking if you have anything that overcomes the explicit statements in these deed records to the effect that Mrs. Huezo, in fact, has no legal interest in the property.

MR. STONG:  Ms. Huezo, you don't have to respond to that.  That's just a statement.

MS. HUEZO:  Okay.

MR. ROBERTS:  Well, when I say, "I'd like to know if", I mean, do you have any?

MR. STONG:  If you're aware if you have any documentation, Ms. Huezo, you can answer that question.  If you don't know -- if you don't know, then don't know. [3]

---

[1] That is clearly a false statement. Giving the debtor the opportunity to articulate why her claim of exemption was valid, was the main reason for the scheduling of the second meeting of creditors. Immediately after stating that objection, counsel contradicted himself by giving exactly such a legal opinion. Moreover, Roberts requested *facts*, not just legal opinions.

[2] That is clearly not enough, as the property has to have been acquired during the marriage. See Roberts' second Point and California Family Code § 760.

[3] Again with the speaking objection. Counsel's statement appears to be a not-very-hidden impermissible coaching comment as to how to respond to the question. Note also that Debtor counsel changed Roberts' question, from "facts and arguments" to "documentation." In any case,

POINTS AND AUTHORITIES

MS. HUEZO:  Yeah, I have no idea what he's talking about.

*TR., Second Meeting of Creditors*, August 14, 2023, pp. 4-6.

Despite all this, on August 15 Trustee Kurtz inexplicably filed a Report of No Distribution indicating "Assets Exempt: $ 974419.15, Claims Scheduled: $ 2502568.24," where the Assets Exempt figure clearly includes the claim of exemption on the 9401 Wayside property. DE #19. How is that Report, *purportedly* legitimizing the claim of exemption, in any way consistent with the relevant facts *as admitted by the Debtor under oath in the Trustee's presence*, and confirmed by the property report about 9401 Wayside obtained by the Trustee herself?

Finally, Roberts points to Ex. 5, *Certificate of No Public Record* from the California Department of Public Health. It shows no marriage certificate being found in the statewide index for Krista Godbold and Victor Huezo between July 1905 and the date of the search in April 2023. Perhaps this explains why so many of the deed records pertaining to the 9401 Wayside property *describe Victor Huezo as a "single man."* See Exhibits 6-8.

Nothing more should be needed for Roberts to be granted all the relief requested in this Motion. However, out of an abundance of caution, Roberts will continue.

---

if Mrs. Huezo did in fact have any such facts, arguments, *or* documentation, the impermissible coaching comment would be very *bad* legal advice. The second 341(a) meeting was a prime opportunity for Mrs. Huezo to bring forth whatever support she might have for her claim of exemption and thereby show Roberts that this Motion would lack merit.

POINTS AND AUTHORITIES

3.    *Debtor has made numerous false statements evidencing a lack of credibility in her previous filings/recordings in this Court, in this District, and Los Angeles County real property records.*

The false statements catalogued here serve to illustrate for this Court, how fast and loose Debtor plays with the facts of great legal and financial import, even when under oath.[4]

a)    The Debtor describes her debt to Movant Roberts arising from the fraud judgment against her husband as both unsecured and secured. *OP*, DE #1, p. 27, item 4.4, and p. 44, item 1. Any claimed exemption is not supposed to be interpreted as reducing the amount by which a claim is secured. Roberts' judgment lien against the Debtor's purported real property has not yet been avoided; avoidance has only been requested.

b)    The Debtor claims that the totality of her debt is primarily consumer debt. *OP*, DE #1, p. 38, Item 6. She can justify this position only by including among her debts the US Bank mortgage amount of $559,606.90 on the 9401 Wayside property. *Id.* For

---

[4] Roberts notes that bankruptcy law treats frivolous statements with less tolerance when they are made in the original petition. "McCandless was not entitled to any safe harbor because his Rule 9011(b) violation arose in the petition itself. See Rule 9011(c)(1)(A) (stating that the 21-day safe harbor does not apply "if the conduct alleged is the filing of a petition in violation of subdivision (b))." *In re Carrera*, Not Reported in B.R. Rptr. (2016), 2016 WL 4400652, BAP No. NC-15-1383-KiTaJu, p. 8. And in *In re Nakhuda*, 544 B.R. 886 (2016), the BAP upheld a sanction against an attorney consisting of an order to disgorge all fees paid to him by the debtor for failing to have a "basic understanding of bankruptcy concepts". That criticism here must be extended to opposing counsel's apparent lack of familiarity with Family Code § 760.

her to include that debt among her debts is frivolous for all the reasons presented under the preceding Point.

c) Krista Huezo described the fraud judgment against her husband as arising from a "Breach of Promissory Note," without mentioning the fraud finding. *OP*, DE #1, p. 39, item 9. In what can only be another misguided attempt to distance herself from her husband's fraud, she also gave the Case Title as the name of the movant, Gregg Roberts, instead of the correct title *Joey Ball v. Victor Huezo.*

d) In her request for more time to respond to Roberts' request for an earnings withholding order in the case against her husband, Debtor made several false statements. Their falsity was proven by Ex. 9, Roberts' RESPONSE TO MOTION TO EXTEND TIME TO RESPOND TO REQUEST FOR EWO, Case #2:11-ap-02825-RK, DE #357, with page numbers given below:

   i. That there was an "extensive record" that needed to be reviewed before she could properly respond to Roberts' request for earnings withholding order (4-5);

   ii. That Debtor, a private schoolteacher with more than 10 years' experience, had not been informed by the process server, a licensed professional investigator, that she was being served, and that this significantly delayed her realization that she had been served with legal process and was the right person to be served with it, even though it named her husband in the case style on the first page and she was married to him throughout the more than 10 years of litigation against him (5-7);

iii. That a proof of service would tell her more than the document title on the paper with which she agreed she had been served (not to mention the rest of that entire paper (*id.*);

iv. That she was not able to reach Roberts to find out whether he would oppose the extension, even though his phone number was at the upper-left corner of the served paper, and even though *Matt Resnik, a named partner at her attorney's firm and the attorney of record in THIS case, requested the extension from Roberts in a live telephone conversation – a request that Roberts respectfully declined* (7-9).

Without commenting on the evident fraud upon the Court, Judge Robert Kwan nonetheless sided with Roberts on both the opposition to the extension, and on the motion itself for an earnings withholding order. *Order Denying Extension of Time and Deeming EWO Motion Unopposed*, May 30, 2023, Case #2:11-ap-02825-RK, DE #359, Ex. 10; and *Order of June 6*, DE #362, Ex. 3.

As to false statements made in real property records, at the First Meeting of Creditors, cited above, the debtor confirmed that she was married when in 2011 she transferred title to a property on Locust Street as a "single woman":

> MR. ROBERTS:  And your grant deed selling the Locust (phonetic) Street
>     property at recording number 2011 145 3274 described you as a single
>     woman, correct?
> MR. STONG:  Wait.  Do you have a time frame for that, Mr. Roberts?

*TR., First Meeting of Creditors*, July 17, 2023, 9:14-18

MS. HUEZO[5]:  -- could you give me the time frame that this document was
    signed -- you purport --
MR. ROBERTS:  Yes.
MR. STONG:  -- it was signed?
MR. ROBERTS:  I don't see the signature date that
easily, but I see the recording date as October 27th of 2011.
MR. STONG:  You can answer the question, Ms. Huezo, if you have a -- if you
    recollect what was transpired on that date.
MS. HUEZO:  I do not remember.
MR. ROBERTS:  Were you single on that date?
MS. HUEZO:  In 2011?
MR. ROBERTS:  That's right.
MS. HUEZO: No.

Id., 10:10-23.

    *4.  The amount of the equity in the property held by the Debtor's spouse that is protected by the homestead exemption must be reduced by the amount of ill-gotten gains "used to acquire" or "funneled into" the homestead property.*

To this catalogue of circumstances under which a homestead is subject to execution sale, the courts have added those cases where money has been obtained from the executing creditor by fraud and used to acquire the homestead property. This rule, based upon fundamental concepts of equity, was first declared in the early case of *Shinn v. MacPherson*, 58 Cal. 596. *Shinn* was followed by *Kemp v. Enemark*, 194 Cal. 748 [230 P. 441] and *Duhart v. O'Rourke*, 99 Cal.App.2d 277 [221 P.2d 767]. In each of these cases, all or substantially all of the fraudulently obtained funds were funneled into the homestead property, for the obvious purpose of retaining ill-gotten gains by rendering them execution-proof. On their

---

[5] This statement was actually made by Mr. Stong.

facts the cited cases are obviously correct because they satisfy the elementary rule that one cannot be permitted to profit by his own wrong.

*Schoenfeld v. Norberg* (1968), 267 Cal. App. 2d 496, 498

It would seem to be a matter of common sense that the mortgage payment is the single largest monthly payment most families have in California. This would be especially true for a hilltop home valued at approximately $1 million. *OP*, DE #1, p. 9, item 1.

Accordingly, in the absence of evidence to the contrary, this Court should presume that all the ill-gotten gains not definitively proven by the Debtor in an opposition to this Motion to have been transferred to entities other than the mortgage holder on the debtor's homestead – *and never indirectly through those entities, paid to the mortgage holder* – should be presumed to have been put into the homestead, accordingly reducing the exempt amount.

As implied by the first Point, the burden of proof is on the Debtor to prove how *little* of any ill-gotten gains were used to purchase homestead property, not on Roberts to prove how *much*. If Krista Huezo cannot produce records to show that the ill-gotten gains were placed somewhere other than the alleged homestead, this Court is entitled to presume that they were placed into the alleged homestead.

It was clear from the facts and the law all along that the Huezos had a duty to preserve the relevant records. Roberts has reviewed tens of thousands of records provided to him by Assignor Ball and his counsel, to little avail. Only the minimal amounts of Ball's money that Victor Huezo returned to him along the way to maintain Ball's ill-placed trust, could credibly be exempted from any reduction in the homestead amount. While blame could be placed on Ball's

POINTS AND AUTHORITIES

attorney for not requesting the relevant records during the prejudgment and appellate litigation, that would be irrelevant here. And it's not clear that such blame would be well-placed. Records that are relevant only to the *enforcement* of a judgment might have been considered irrelevant and therefore non-discoverable *before* judgment. And yet it took over 10 years to get a final judgment . Thus are judgment creditors forced to bear the consequences of the many legal Catch-22's that work against them, when the law *should* be in their favor.

Funds that did not go from Ball through Huezo's company Fremont Investment Holdings/Funding, directly to any entity holding the mortgage at 9401 Wayside, must nonetheless be presumed to have found their way there indirectly. This would have been either after payment from Fremont to Victor Huezo, and then from his personal account to the mortgage holder, or less directly, after being invested (laundered?) through various other investment schemes of Huezo's (legitimate or otherwise).

At both Meetings of Creditors, Roberts tried – to no avail – to see what records or memories Mrs. Huezo might still have, that would bear on this question:

> MR. ROBERTS:  What did you do with the money from the sale of the Locust
>     Street property?
> MR. STONG:  In 2011, Ms. Huezo.[6]
> MS. HUEZO: Yes, I don't recall what -- I honestly don't even remember.  My
>     husband was dealing with that, and I don't remember.
> MR. ROBERTS:  All right.  Thank you.  Where did you get the money to
>     purchase the Locust property?  Same answer?

---

[6] Another impermissible speaking objection or coaching, basically telling Ms. Huezo to say that she doesn't remember.

MS. HUEZO:  I'm sorry.

MR. STONG:  We're talking about a transaction that occurred twelve years ago and a sale of a house twelve years ago.

MS. HUEZO:  Yeah.

MR. STONG:  Are you looking for assets that are part of this bankruptcy? Because if you are, I don't believe that those would be assets --

MR. ROBERTS:  Yes.

MR. STONG:  -- of this bankruptcy since they were sold twelve years ago.  So please ask a question for assets that may be part of this bankruptcy.

MR. ROBERTS:  Ill-gotten gains invested into a mortgage are not protected by the homestead exemption.  That's the import of my question.  It doesn't matter when they were put into it.

MR. STONG:  Ms. Huezo, have you listed all of your assets at this time?

MS. HUEZO:  I have, yes.

*TR., First Meeting of Creditors*, July 17, 2023, 10:24–11:25.


MR. ROBERTS:  Again, this is getting at whether the proceeds from the sale of that property were used to reduce the amount due on the 9401 Wayside property, which has to do with current value of assets of Mrs. Huezo and/or her husband, which still seems to be kind of hanging in the air.  I don't want to be accused of violating the stay in this case if I were to levy the property, which is why I was pressing on the issue about the Wayside property itself earlier.  But I also need to find out, without spending excess money and time on a 2004 exam, this is an asset-related inquiry so --

MR. STONG:  I understand your position, Mr. Roberts. The trustee is satisfied that the property is community.

*TR. Second Meeting of Creditors*, August 14, 2023, 7:7-18


**Wait, *what?*** On possible basis did Debtor counsel make that last statement? The statement appears to be completely unsupported, and Counsel must have known that it was unsupported. If the Trustee had already been satisfied that the property was community

POINTS AND AUTHORITIES

property, surely the Trustee would have announced that fact at the beginning of the Second

Meeting of Creditors, and either canceled the rest of the Meeting or instructed Roberts to restrict

his questions to other assets.[7] But that's not what happened.

Debtor counsel's statement seems to have been intended to gaslight Roberts into

thinking that he was somehow "out of bounds" with his questions, and that it was already too

late for him to prevail in getting the Debtor's claim of exemption disallowed.

Moreover, what Roberts was currently asking about was not even whether the 9401

Wayside property was community property; his questions at that point were clearly directed at

reducing the amount of the homestead exemption that could be applicable to that property, if the

Debtor were to prevail in her claim that it was community property.

In the Central District of California, are attorneys really allowed to make such clearly

false and misleading statements and get away with it scot-free? Why should creditors be

---

[7] Why didn't the Trustee step in at this point and state that she had in fact made absolutely no such finding? Perhaps this Court begins to understand now – if it did not understand it before – that presumptions about the high quality of the Trustees' performance at these Meetings – expressed in open court by another bankruptcy judge in another of Roberts' cases – are not warranted. This is not the first time Roberts has been prejudiced by actions or inactions by a Bankruptcy Trustee, where the Trustee had an apparent duty to act otherwise or at least explain the lack of action. Roberts has been subjected to something like this at least twice before, in his experience the last two-three years pursuing his interests in the Central District Bankruptcy Court against debtors with fraud judgments. He has even seen it when the US Trustee sent an attorney to observe at a second Meeting. That attorney told the Debtor during the Meeting that more documents were going to be requested, but admitted to Roberts later that he never actually made that request.

POINTS AND AUTHORITIES

required to bring a Rule 9011 motion when an officer of the Court is present and witnesses the

violation?

   Picking up where we left off:

MR. STONG: –We're standing on our position that it's community.  If you have
     some other position, then bring a proper lawsuit, bring a proper adversary,
     bring a proper motion, or bring a proper 2004 exam.  It's your choice.
But it has nothing to do with the assets in this case. They've already been
     disclosed.  The trustee's done her job.
MR. ROBERTS:  I know what -- I'm under a different impression, but I'm not
     going to waste time explaining it right now.  We can do what you said when
     the time is right.
But again, pursuing the question of the value -- excuse me, the amount of the
     exemption, according to the declaration of Joey Ball in support of an
     application for any right to attach order in the state court litigation, which was
     then converted over into the bankruptcy litigation against Mr. Huezo, but that
     was in the Los Angeles case number BC-460985, I see records of five loans
     made by Mr. Ball to Mr. Huezo, leaving up to a 400,000-dollar-and-change
     investment/loan in March of 2008.  The purchase for the Locust property was
     done in April of 2008.
And I'm wondering if perhaps Mrs. Huezo has refreshed her memory about where
     the funds to purchase the Locust property came from.  Any possible source
     other than Mr. Ball, I would love to hear about it.
MR. STONG:  I'll let her answer that question. Go head, Ms. Huezo.
MS. HUEZO:  I don't know what you're talking about. All of that that you just
     said has to do with my husband's business with Joey Ball, and I had no part of
     that.  So I have no idea.

*Id.*, 7:18–8:22.

MR. ROBERTS:  – Do you have records about those transactions still, bank
     records or anything else that would evidence --
MR. STONG:  Ms. Huezo, if you anything about any documents, you can tell Mr.
     Roberts if you know about any documents.

MS. HUEZO:  I do not have any documents.  That was such a long time ago.  I have no idea.

MR. STONG:  And Mr. Roberts, I would encourage you to go to the person who sold you the judgement and get those documents.  She doesn't know where they are.  She doesn't know what they are.  And she doesn't have any interest in any of that.  She doesn't know.

MR. ROBERTS:  Yes.  Yeah, there is a massive amount of those documents–

MR. STONG:  She can only say it a number of times. She doesn't know, Mr. Roberts.  Ask a question about assets.[8]

MR. ROBERTS:  In your original petition, Mrs. Huezo, I saw no mention of a deed of trust issued to Mr. Sarinana, Hector Sarinana, and I don't see any reconveyance of it.  Has Mr. Sarinana's note been paid off?

MR. STONG:  Mr. Roberts, what property does that relate to?

MR. ROBERTS:  The Wayside property.

MS. HUEZO:  I am not aware of what that is. [9]


    Roberts afforded Ms. Huezo every opportunity to defend the proposition that she is entitled to a claim of exemption on the 9401 Wayside property at all, and further, that she is entitled to the full *amount* of that exemption. She failed utterly to support, much less prove, either proposition.

---

[8] As if that isn't what Roberts has been doing. More gaslighting. More coaching. And now testifying. And giving Roberts legal advice. As if Roberts hasn't already acquired tens of thousands of pages of documents from Ball and his former attorney, and reviewed them to no avail.

[9] This section of Q & A shows that Mrs. Huezo does not seem to have carefully reviewed – with assistance from counsel, or otherwise – all the deed records that bear on the question she was required to answer truthfully in her original petition, as to all encumbrances on the 9401 Wayside property, and all creditors who are secured with respect to it. This is another example of her carelessness with the truth that could be placed into the preceding section of this Motion, but Roberts did not wish to interrupt the flow of the last part of the transcript of the second 341(a) Meeting by moving that material into that section.

POINTS AND AUTHORITIES

Still other portions of the ill-gotten gains might have been "funneled into" the homestead indirectly, by being applied first to other household needs, which in turn freed up *other* income to go into the homestead. Is that not a form of money laundering? How should that not still subject those funds to execution by a judgment creditor?

Regardless of the path that the ill-gotten gains took, *all amounts taken by Victor Huezo / Fremont from Ball and not returned to him, were ill-gotten, and must reduce the homestead exemption by an equivalent amount*.

The Huezos were on constructive notice about what the law says regarding ill-gotten gains being placed into a homestead. They were on constructive notice about the burden of proof on a claim of exemption in California, including the applicable caselaw. The absence of records showing the disposition of the ill-gotten gains must weigh definitively against the Huezos, not Roberts. This Court should include in its ruling on this Motion – preferably explicitly, for appeal purposes – findings of fact and conclusions of law disposing of the claim of exemption, based in part on the Huezos' failure to preserve records. That failure is evidenced by Krista Huezo's testimony at the second Meeting of Creditors and emphasized by her counsel at the second meeting.

There would have been no point in Roberts' subpoenaing records from third parties, as no third parties, particularly banks or mortgage companies, are obligated to keep records for more than seven years. The "funneling" of the ill-gotten gains into the homestead was surely completed long before 2016, five years into the litigation between Ball and Huezo.

POINTS AND AUTHORITIES

## C. CONCLUSION

"The policy of the law favors the enforcement of judgments." *Yolanda's, Inc. v. Kahl & Goveia Commercial Real Estate*, 11 Cal.App.5th 509, 516 (2017). All the relevant facts and law support granting this Motion.

A fair and just *ultimate* outcome of granting the Motion in this case would be to clear the way for Roberts to pursue a levy and order of sale forcing Victor Huezo to make good on a clearly insincere offer that he made to quitclaim his home to Roberts. Krista Huezo must get dragged along in that outcome. She made her bed with Victor, "standing by her man" as he defrauded Roberts' assignor and predecessor-in-interest Joey Ball. Together, Krista and Victor forced Joey to spend more than ten years and hundreds of thousands of dollars in attorney fees trying to get back the money that his so-called friend defrauded him of. Now Krista can lie in that same bed.

**WHEREFORE**, Assignee of Record / Judgment Creditor Gregg Roberts respectfully requests that this Court grant the motion and find that Krista Ann Huezo is entitled to no homestead exemption whatsoever on the 9401 Wayside Drive property.

In the alternative, Roberts requests that this Court find that the Debtor's homestead exemption is reduced by the full amount of the judgment with interest minus the minimal amounts repaid to Ball by Victor Huezo with interest on those amounts. Roberts would not object the court giving Mrs. Huezo a chance to review the records in her husband's case to determine what those amounts are, if she can. That alternative finding would have largely the

same effect as finding that she is entitled to no claim of exemption at all, since more is due and owing on the judgment than the current value of the real property exemption in Los Angeles County.

Roberts further requests that this Court issue Findings of Fact and Conclusions of Law regarding its decision, which would be helpful in the event that either party decides to appeal the Court's decision on this Motion.

POINTS AND AUTHORITIES

24

Gregg Roberts
43430 E Florida Ave Ste #F-293
Hemet CA 92544
951-330-4450
Assignee of Record and Judgment Creditor, Pro Se

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

|  |  |
|---|---|
| In re Krista Huezo,<br><br>Debtor | Case No.: 2:23-bk-13644-BB<br>Chapter 7 Proceeding<br><br>**DECLARATION OF GREGG ROBERTS**<br><br>Filed in Support of Motion for Determination of Claim of Exemption, and for More Time to Submit Exhibits in Proper Form |

I am over the age of 18 years and competent to make this Declaration. I have personal knowledge of the matters herein, other than those indicated as being known by information and belief, and I would and could competently testify about them if called to do so.

All factual claims in the accompanying Motion are true and correct, to the best of my knowledge, information, and belief.

DECLARATION OF GREGG ROBERTS

1

All exhibits to this Motion are true and correct copies of the documents that they purport to be.

All the transcribed words from the Meetings of Creditors are accurate to the best of Roberts' information and belief.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Signed at Hemet, California, this 13th day of September, 2023.

*Gregg Roberts*

Gregg Roberts, Assignee of Record / Judgment Creditor

DECLARATION OF GREGG ROBERTS

2